United States District Court
Southern District of Texas
**ENTERED**
March 20, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DERAIL GREEN, § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:23-CV-04452 |
| § | |
| SNAP RTO LLC, § | |
| *Defendant*. § | |

## MEMORANDUM AND RECOMMENDATION

This case, in which Plaintiff is proceeding pro se and in forma pauperis, is before the Court on Defendant Snap RTO, LLC's Motion to Compel Arbitration and to Dismiss Case.[1] ECF 8. Having reviewed the parties' submissions and the law, the Court RECOMMENDS that Defendant's Motion (ECF 8) be GRANTED for the reasons set forth below.

### I.     Factual and Procedural Background.

On August 26, 2023, Plaintiff and Defendant entered into a Rental-Purchase Agreement (the "RPA") for jewelry (the "Property"), which Plaintiff describes as a consumer credit transaction. ECF 1 at 6; *see* ECF 1-2 at 4; ECF 8-2. The RPA provides: "By signing this [agreement], the undersigned Customer ('you' and 'your') chooses to rent the Property from the Lease Company ('we,' 'us,' and 'our')

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  ECF 5.

according to the terms of this Agreement." ECF 8-2 at 6.  The RPA required Plaintiff to make an initial payment of $79.00 and seventy-eight weekly payments of $69.13 to acquire the Property.  ECF 8-2 at 6.

The RPA contains an arbitration clause (the "Arbitration Agreement") providing that "[i]f one party begins or threatens a lawsuit, the other party … can demand arbitration."  ECF 8-2 at 14.  The Arbitration Agreement "governs all 'Disputes' involving the parties," including:

> all claims arising from or related to your application and [Rental-Purchase] Agreements with us or the relationships resulting therefrom. This includes claims related to information you previously gave us. It includes all past agreements. It includes, as may be applicable, any additional periods, extensions, renewals, and plans. It includes claims related to damaged property, buyout, reinstatement, loss, damage, warranty, maintenance, collection, possession, privacy, and customer information. "Disputes" includes, but is not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity. It includes claims that seek individual relief of any type, including damages and/or injunctive, declaratory or other equitable relief. It includes claims related to the validity in general of this [Rental-Purchase] Agreement. However, it does not include disputes about the validity, coverage or scope of this Clause or any part of this Clause. All such disputes are for a court and not an Arbitrator to decide. But a Dispute about this [Rental-Purchase] Agreement as a whole is for an Arbitrator, not a court, to decide.

ECF 8-2 at 13.  Plaintiff was permitted to "opt-out" of the Arbitration Agreement by sending Defendant "a signed notice within 30 calendar days" after the date he signed

the RPA.  ECF 8-2 at 13.  Defendant maintains that it never received a written rejection of the Arbitration Agreement from Plaintiff.  ECF 8-2 at 3.

In October 2023, Plaintiff began sending Defendant notices purporting to rely on the Federal Reserve Act to use "equity" and "interest" from his social security number to satisfy his balance on the RPA.  ECF 1-4 at 3–4; ECF 3 at 3, 8; ECF 12 at 2.  Plaintiff filed this lawsuit against Defendant on November 21, 2023 seeking to recover alleged damages in connection with the RPA.  ECF 1.  Plaintiff appears to assert a variety of claims including breach of contract, breach of fiduciary duties, and violations of numerous consumer protection statutes.[2]  He alleges that Defendant is "negligently entering into consumer credit transactions" and asserts that the "current contract is not equitable to [him] at all and [he is] being extorted."  ECF 1 at 6.  Plaintiff submitted a copy of the RPA with the Complaint.[3]  ECF 1-2.

Defendant filed the instant Motion to Compel Arbitration and to Dismiss Case on December 29, 2023.  ECF 8.  Plaintiff responded (ECF 12); Defendant replied (ECF 13); Plaintiff filed a surreply (ECF 14).

---

[2] Specifically, Plaintiff identifies "Federal Reserve Act Section 16, Federal Reserve Act Section 29, Securities Act of 1933, Bill of Exchange Act 1882, Racketeering, Breach of contract, Breach of fiduciary duties, 18 U.S.C. 8, 15 U.S.C. 1601, 15 U.S.C. 1615, [and] 12 U.S.C. 1413" as the basis for this Court's jurisdiction.  ECF 1 at 3.

[3] The RPA submitted with the Complaint does not include the portion containing the Arbitration Agreement.  Defendant submitted the entire RPA with its Motion to Compel Arbitration.  ECF 8-2.

## II.     Legal Standards.

The Federal Arbitration Act (FAA) provides that agreements to arbitrate are valid and enforceable.  9 U.S.C. § 2.  However, parties that have not agreed to arbitrate are not required to do so.  *Volt Info. Scis., Inc. v. Bd. Of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).  Determining whether the parties have agreed to arbitrate requires the court to decide (1) whether the parties have a valid arbitration agreement and (2) whether the specific dispute in question falls within the scope of their arbitration agreement.  *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001); *Galvez v. Arandas Bakery No. 3 Inc.*, No. 4:22-CV-00712, 2023 WL 2652249, at *2 (S.D. Tex. Mar. 24, 2023).  If both elements are met, the court must compel arbitration unless there is a federal statute or policy against arbitration.  *OPE Int'l LP*, 258 F.3d at 445; *Galvez*, 2023 WL 2652249, at *2.

If the court compels arbitration, the Federal Arbitration Act provides that the court should stay the lawsuit until arbitration is completed.  9 U.S.C. § 3.  However, if all claims and issues in the case are subject to arbitration, the court retains discretion to dismiss the case without prejudice.  *Intermed Serv. Manag. Co., LP v. Horshoe LLC*, No. 3:22-CV-0191-N, 2023 WL 5758879, at *5 (N.D. Tex. Sept. 6, 2023) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).

### III.     Analysis.

### A. A valid arbitration agreement exists between the parties.

Courts apply the "ordinary state law principles that govern the formation of contracts" when determining whether the parties entered into a valid arbitration agreement. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). "If the agreement at issue contains a choice-of-law provision, the law of the state named in that provision guides the inquiry." *Dow v. Keller Williams Realty, Inc.*, 625 F. Supp. 3d 556, 562 (N.D. Tex. 2022). Here, the RPA contains a governing law provision stating "[t]he law of the state in which you reside when you signed this Agreement and applicable federal law will govern the Agreement and the interpretation of it." ECF 8-2 at 11. Plaintiff provided a Texas address when he signed the RPA. *See id.* at 6. Therefore, the Court applies Texas law to determine the validity of the agreements.

The elements of a valid contract under Texas law are: "(i) an offer, (ii) an acceptance in strict compliance with the terms of the offer, (iii) a meeting of the minds, (iv) each party's consent to the terms, and (v) execution and delivery of the contract with intent that it be mutual and binding." *Galvez*, 2023 WL 2652249, at *3 (citations omitted). "Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007).

Plaintiff appears to raise two arguments challenging the validity of the agreements in this case. He asserts that (1) "[t]he validity of [the RPA] and Arbitration Agreement are at question because it is a lease agreement which was initially created by entering into a consumer credit transaction;" and (2) the Arbitration Agreement is "unconscionable" because it defines "'disputes' [with] the broadest possible meaning." ECF 12 at 3. Plaintiff offers no support for either assertion, nor does he explain why the agreements are "in question" or why the breadth of "disputes" would render the Arbitration Agreement unconscionable. *See Green v. TMX Fin. of Tex., Inc.*, No. 1:23-CV-1006-DII, 2024 WL 409734, at *3 (W.D. Tex. Feb. 2, 2024) (compelling arbitration based on similar language).

It is undisputed that both Plaintiff and Defendant digitally signed the RPA on August 26, 2023. ECF 8-2 at 7. Directly above the signature line, the RPA states:

> By signing, you agree that you received a legible copy of this Agreement. You agree to the terms of this Agreement, which includes without limitation the Additional Agreement Terms (including the Electronic Payment Authorization and the Customer Communications and Recordings sections, the **Arbitration Clause set forth in Exhibit B**, and the other terms, conditions and Exhibits references herein or attached hereto).

ECF 1-2 at 5; ECF 8-2 at 7 (emphasis added). Plaintiff was afforded the opportunity to opt-out of the Arbitration Agreement; however, Defendant has provided a declaration stating that neither it "nor any of its affiliates received a written rejection of the Arbitration Agreement from Plaintiff." ECF 8-2 at 3. Plaintiff also fails to

6

allege he opted out of the Arbitration Agreement by providing notice to Defendant within 30 days. *See* ECF 12. Therefore, the Court finds Defendant has established that a valid arbitration agreement exists between the parties.

### B. The dispute falls within the scope of the arbitration agreement.

When a valid arbitration agreement exists, there is a presumption in favor of arbitration. Any doubts as to whether the dispute at issue falls within the scope of the agreement must be resolved in favor of arbitration. *McClairne v. Titlemax of Texas, Inc.*, No. 4:22-CV-03334, 2023 WL 3739085, at *3 (S.D. Tex. May 30, 2023); *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996). Arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *McClairne*, 2023 WL 3739085, at *3 (quoting *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986)).

By signing the RPA, Plaintiff agreed to arbitrate "all 'Disputes' involving the parties," specifically including "all claims arising from or related to [his] application and Agreements with [Defendant] or the relationships resulting therefrom." ECF 8-2 at 13. The dispute in this case arises directly out of the parties' dealings under the RPA. Indeed, Plaintiff's claims exist only because he signed the RPA. The Court therefore finds Plaintiff's claims fall within the scope of the Arbitration Agreement. *See McClairne*, 2023 WL 3739085, at *1, 3 (enforcing arbitration agreement which

gave "disputes" a "broad meaning" and finding plaintiff's claims were covered by the agreement).

Furthermore, the Court finds that no federal statute or policy renders Plaintiff's claims non-arbitrable. Plaintiff argues in response to the Motion to Compel Arbitration that "[f]ederal statute renders the Defendant's claim non-arbitrable." ECF 12 at 4. However, he has provided no authority, and the Court is aware of none, to support his conclusory assertion. *See Elkjer v. Scheef & Stone, L.L.P.*, 8 F. Supp. 3d 845, 857 (N.D. Tex. 2014) ("The party wishing to avoid arbitration bears the burden of proving that Congress intended to preclude a waiver of a judicial forum for the statutory claim at issue.")

For these reasons, Plaintiff should be compelled to arbitrate his claims.

### C. Plaintiff's suit should be dismissed without prejudice rather than stayed.

Upon determining that a matter should be referred to arbitration, § 3 of the Federal Arbitration Act directs the Court to stay the lawsuit until arbitration is completed. 9 U.S.C. § 3. The Fifth Circuit has clarified, however, that "when all of the issues raised in the district court must be submitted to arbitration," the Court retains discretion to dismiss the case without prejudice. *Adam Techs. Intern. S.A. de C.V. v. Sutherland Glob. Services, Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013); *Galvez*, 2023 WL 2652249, at *5–6. Because all of Plaintiff's claims are subject to arbitration, dismissal without prejudice is appropriate.

## IV. Conclusion and Recommendation.

For the reasons stated above, the Court RECOMMENDS that Defendant's Motion to Compel Arbitration and to Dismiss Case (ECF 8) be GRANTED and that Plaintiff's claims be dismissed without prejudice.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on March 20, 2024, at Houston, Texas.

                                                Christina A. Bryan
                                      United States Magistrate Judge